United States Court of Appeals,

Eleventh Circuit.

Nos. 95-8071, 95-9045.

UNITED STATES of America, Plaintiff-Appellee,

v.

Patrick GONSALVES, Defendant-Appellant.

United States of America, Plaintiff-Appellee,

v.

Cedric Starks, Defendant-Appellant.

Sept. 5, 1997.

Appeals from the United States District Court for the Northern District of Georgia.

Before BLACK, Circuit Judge, RONEY, Senior Circuit Judge, and BURNS[*], Senior District Judge.

RONEY, Senior Circuit Judge:

Convicted of drug and related firearms charges on guilty pleas entered pursuant to agreement, defendants Patrick Gonsalves and Cedric Starks each raise one joint issue and one separate issue. We affirm all three.

(1) We hold that U.S.S.G. § 4B1.1 does not exceed its statutory authority by including state court convictions in addition to federal convictions as permissible predicate offenses for career offender enhancement.

(2) As to Gonsalves's separate issue, the district court did not clearly err in denying Gonsalves's motion for specific performance of his plea agreement based upon an allegation of bad faith in the government's failure to file a U.S.S.G. § 5K1.1 motion for downward departure for substantial assistance.

---

[*]Honorable James M. Burns, Senior U.S. District Judge for the District of Oregon, sitting by designation.

(3) As to Starks' separate issue, there was no plain error in the district court's failure to enter a downward departure for acceptance of responsibility on Starks' sentence where Starks did not present his argument on appeal to the district court.

*(1) Use of State Convictions for Career Offender Enhancement*

The district court concluded that Gonsalves and Starks were career offenders under U.S.S.G. § 4B1.1. Defendants challenge the validity of that portion of 4B1.1. that takes into account their prior state court convictions in arriving at career criminal status.

Defendants argue that the Commission went beyond the statutory authority in 28 U.S.C. § 994(h) by including state court convictions in this guideline. Section 994(h) indeed refers to only specific past federal offenses, not state offenses, as the basis for career criminal enhancement.[1] Five other circuits have already held, however, that the Commission did not exceed its authority under section 994(h)(2)(B) in including prior state convictions as a basis for enhancement under U.S.S.G. § 4B1.1. *See United States v. Brown,* 23 F.3d 839 (4th Cir.1994); *United States v. Consuegra,* 22 F.3d 788, 790 (8th Cir.1994); *United States v. Beasley,* 12 F.3d 280 (1st Cir.1993); *United States v. Rivera,* 996 F.2d 993, 995-97 (9th Cir.1993); *United States v. Whyte,* 892 F.2d 1170, 1174 (3rd Cir.1989).

In the first case, *Whyte,* decided in 1989, Judge Becker reasoned as follows:

---

[1]The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—

(1) has been convicted of a felony that is—(A) a crime of violence;  or (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 et seq.);  and

(2) has previously been convicted of two or more prior felonies, each of which is—(A) a crime of violence;  or (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 et seq.).  28 U.S.C. § 994(h).

We believe that if Congress had wanted only convictions under particular federal statutes to serve as predicate offenses, it could have said so quite simply. Instead, Congress referred to "offenses described in"—not "convictions obtained under"—those statutes. As the government notes, this language suggests that the predicate drug convictions need not be federal themselves, but only "be for conduct [that] could have been charged federally.... Moreover, the government's reading, more so than Whyte's, effectuates the purpose of section 994(h)—to impose "substantial prison terms' on "repeat drug traffickers.' " S. Rep. 225, 98th Cong., 2d sess. 175 *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3358.

892 F.2d at 1174.

In 1993, in *Beasley,* Judge Breyer (now Associate Justice Breyer) wrote for the Third Circuit:

We ... do not accept (the) argument for three basic reasons. First, although the language of Part (B), unlike Part (A), does refer to specific federal statutes, if one reads its words literally, it does not exclude, but rather *includes,* convictions under state law. Part (B) refers to "an offense *described in* " the particular specified federal statutes. Those statues describe behavior commonly called "drug trafficking." They refer to such activities as the making, importing, exporting, distributing, or dispensing, of drugs, and possessing drugs with an intent to engage in these activities. They do not refer to simple possession of drugs (except when entering or leaving the country). A literal reading of the statute would include a conviction under a state law that criminalizes some, or all, of these activities for such a state law would create "an offense, *described in* " the federal statute.

Second, examination of the purpose of the statutory provision supports the literal reading just described.

....

Third, Beasley's interpretation would create a significant anomaly in a guideline system, the primary objective of which is to create uniformity of sentencing treatment. *See Mistretta v. United States,* 488 U.S. 361, 365-66, 109 S.Ct. 647, 651-52, 102 L.Ed.2d 714 (1989); 38 U.S.C. § 991(b)(1)(B) (guidelines should "avoid[ ] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar criminal conduct."). In seeking uniformity, to distinguish among offenders on the basis of different behavior, or different criminal backgrounds, often makes sense,.... To distinguish among them on the basis of *which jurisdiction* happened to punish the past criminal behavior seems (in the absence of some special circumstance) close to irrational.

*Beasley,* 12 F.3d at 283.

Appellants do not argue that the conduct criminalized under defendants' state law convictions was not the conduct criminalized under the federal statutes.

We join these circuits in holding that the inclusion of state drug convictions to determine career criminal status under U.S.S.G. § 4B1.1 is within the statutory mandate of 28 U.S.C. § 994(h) for two reasons.

3

First, we agree with the reasoning of those decisions.

Second, since five other circuits have reached the same interpretation of the statute, it is incumbent on other circuits to follow along, absent some compelling justification for rejecting those decisions.

*(2) Gonsalves:  Specific Performance of Plea Agreement*

Under U.S.S.G. § 5K1.1 the government may request the district court to enter a downward departure based upon the substantial assistance of the defendant in the investigation and prosecution of crime.  The district court may not make such a downward departure without the government's request, but the court's decision whether to enter that departure upon the government's request is generally *not* reviewable in this Court.  *See United States v. Brumlik,* 947 F.2d 912, 912 (11th Cir.1991).  Here, however, the government refused to ask the court for a downward departure under § 5K1.1. Gonsalves claims this violated his plea agreement.  The district court's determination that the plea agreement has not been breached *is* reviewable.  *See United States v. Yesil,* 991 F.2d 1527 (11th Cir.1992).

The government concedes that the plea agreement at issue contained an express provision requiring the government to exercise "good faith" in determining whether Gonsalves has provided substantial assistance.  The issue before the district court, therefore, was whether a preponderance of the evidence showed that the government failed to exercise good faith in its determination that Gonsalves did not render substantial assistance.  *See, e.g., Cunningham v. Diesslin,* 92 F.3d 1054 (10th Cir.1996);  *United States v. Hernandez,* 17 F.3d 78 (5th Cir.1994);  *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991).

"Substantial assistance" generally requires that the defendant's assistance has yielded *results* that are useful to the government, not merely that the defendant expended substantial effort or good faith in *attempting* to assist.  *See, e.g., United States v. Torres,* 33 F.3d 130, 133 (1st Cir.1994) (Guidelines had originally provided for a possible departure where the defendant made a "good faith effort" to provide substantial assistance until later amended to delete the "effort" language, *see*

4

U.S.S.G.App. C, amend. No. 290 (Nov.1989), and substitute the requirement that the defendant actually provide substantial assistance).

Gonsalves testified at his sentencing hearing that he substantially assisted the government in four ways, three of which did not yield results and are thus insubstantial. In one instance, however, he testified that he provided the DEA with the names of two individuals, which he said led to getting further information from those persons and led to closing a methamphetamine lab.

Although this may arguably have assisted the government, the connection as asserted in Gonsalves's evidence is vague and there was no evidence that the government's failure to consider this assistance was in bad faith. At the sentencing hearing, the Assistant United States Attorney noted that she had just seen the defense counsel's letter advising her of this assistance, dated two days earlier, just that day in court.

Without making any specific findings, the court held: "I'll rule with [the government] on the bad faith point." In light of the failure of defendant's evidence, the district court's finding that the government did not act in bad faith in deciding not to file the § 5k1.1 motion was not clearly erroneous. *See United States v. Gordon,* 19 F.3d 1387 (11th Cir.1994).

Gonsalves argues he was denied an alleged right to an evidentiary hearing by being prevented from responding to the government's argument in response to Gonsalves's evidence. While this Court does not appear to have determined the issue, the Second Circuit has discussed the proper procedures to determine when an evidentiary hearing is required on a defendant's motion for specific performance of a plea agreement provision for the government to file a 5K1.1 motion. *See, e.g., United States v. Knights,* 968 F.2d 1483 (2d Cir.1992). Even under the *Knights* ' procedure, which this Court has criticized as being too invasive of prosecutorial discretion, *see United States v. Forney,* 9 F.3d 1492, 1503 (11th Cir.1993), Gonsalves was not denied his right to a hearing. Under *Knights,* the defendant must first put forth evidence of bad faith before the government's duty to respond, and defendant's right to reply, are triggered. *Id.* at 1487. Defendant was permitted to

5

testify. Because he did not put forth sufficient evidence that a good faith determination would have found that he had substantially assisted, he was not entitled to be heard further.

*(3) Starks: Denial of Downward Adjustment For Acceptance of Responsibility*

U.S.S.G. § 3E1.1 authorizes the district court to grant a defendant as much as a three level downward adjustment for acceptance of responsibility provided that the defendant "... clearly demonstrates acceptance of responsibility for his offense, ... and [he] has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or timely notifying authorities of his intention to enter a plea of guilty...." U.S.S.G. § 3E1.1(a) and (b).

Starks asserts that he was entitled to an adjustment for acceptance of responsibility because he entered a guilty plea in a timely fashion before trial and told the truth about his offense conduct. The district court was informed, however, that Starks had tested positive for drug use during his pretrial release and had been associating with those who were smoking marijuana. The district court held that those factors outweighed the evidence of acceptance of responsibility.

Starks concedes that those factors could be considered and were sufficient to deny the adjustment, but argues that the district court reversibly erred when it also mentioned Starks' prior criminal convictions:

> It seems to the Court that acceptance of responsibility is properly denied for several reasons. First of all, the defendant tested positive for marijuana. He now contends that he just, you know, it was second-hand smoke. But he does admit that he was in the presence of people that were smoking marijuana.
>
> In the past few years prior to this, he has received first offender treatment which was ultimately taken away from him because of parole violations, and that, and that, and the other. He got another sentence after he was in jail on the first one for the same kind of offense, and if the Court understands the presentence report, parole or probation on that offense ended up being revoked.
>
> He ends up before us and on the day before he is to come to court and after he has been arrested he is still hanging out, under his admission, hanging out with people that are violating the law, and it would seem that he probably was himself.

6

That is no track record to indicate that there is any change, that there is anything other than a continuing pattern of disregard for the law.

While Starks did object in general to the district court's failure to enter a downward adjustment for acceptance of responsibility, he did not object specifically to the district court's consideration of past criminal activity as one factor. Where the properly considered and articulated factors are sufficient to support the district court's denial of a section 3E1.1 adjustment, we will not hear Stark's argument about the erroneous consideration of an additional factor where that same argument was not presented for consideration by the district court. *See United States v. Maurice,* 69 F.3d 1553, 1557 (11th Cir.1995) (failure to raise a specific ground for objection constitutes waiver, and review by this Court is limited to plain error).

AFFIRMED.